GERALD T. McFADDEN (SBN 87446)
Attorney at Law
2366 Front Street
San Diego, CA 92101
(619) 338-0507
E-mail: gtmfadden@hotmail.com

Attorney for Defendant
RENE MARES-INZUNZA

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

(HON. LARRY ALAN BURNS)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Crim. Case No. 08CR0344-LAB |
| ) | |
| Plaintiff, ) | STATEMENT OF FACTS AND |
| ) | POINTS AND AUTHORITIES |
| . ) | IN SUPPORT OF MOTIONS |
| ) | |
| RENE MARES-INZUNZA, ) | |
| ) | |
| Defendant. ) | NCD: April 1, 2008 |
| ) | at 2:00 p.m. |

## I. STATEMENT OF FACTS

The defendant, RENE MARES-INZUNZA, is charged with being an alien who was previously deported and who was found in the United States without official permission on January 20, 2008, in violation of 8 U.S.C. § 1326(a) and (b).

Some discovery has been provided to date but some remains outstanding. Counsel requests leave to file additional substantive motions after review of additional discovery and investigation. The defendant's A file and the tape of the deportation has not yet become available.

According to discovery and subject to amplification or contradiction, the defendant was contacted by U.S. B.P. Agent Slack on January 20, 2008 at about 7:40 a.m. in the Imperial Beach area about 50 yards north of the border. Agent Slack encountered this defendant and another individual and questioned them without <u>Miranda</u> warnings and the defendant is purported to have made incriminating statements. The defendant was arrested and taken to the Border Patrol Station and fingerprinted and photographed and questioned without <u>Miranda</u> warnings and the defendant made incriminating responses and the information and fingerprints were used to obtain additional

1

1  information and evidence.  The defendant was thereafter given warnings, was questioned and again

2  made incriminating responses. Apparently no physical evidence was seized from the defendant.

3  **II.  POINTS AND AUTHORITIES**

4  A.    DISCOVERY.

5  On February 15, 2008, defense counsel made a written request for discovery which is

6  attached hereto as Exhibit "A."  The defense requests that the discovery requested in Exhibit "A" be

7  provided and that this Court enter appropriate orders under F.R.Cr.P. 16.  Rule 16 proscribes the

8  minimum amount of discovery to which the parties are entitled.  This Court has the power to order

9  broader discovery; including the identity of the witnesses.  United States v. Cadet, 727 F.2d 1453,

10  1468-1469 (9th Cir. 1984); United States v. Sims, 637 F.2d 625, 629 (9th Cir. 1980); United States v.

11  Armstrong, 621 F.2d 951, 954-55 (9th Cir. 1980); United States v. Richter, 488 F.2d 170, 173-75 (9th

12  Cir. 1973).  The defense further requests that government agent rough notes be preserved and made

13  available at the time of the pretrial motion hearing.

14  The defense requests that this Court order the disclosure of the Grand Jury transcripts in this

15  case pursuant to F.R.Cr.P. 6(e)(3)(C)(i), its supervisory power, and the common-law right of access

16  to public records.

17  This request involves two separate categories of disclosure.

18  First, the defense requests a transcript of the Court's instructions or explanation regarding the

19  law governing the cases to the Grand Jury and any prosecution explanations of the law to the grand

20  jury.

21  The transcript of the instructions does not implicate any of the reasons underlying the general

22  rule of secrecy of Grand Jury proceedings.  Douglas Oil Co. of Cal. v. Petrol Stops Etc., 441 U.S.

23  211, 218-19, 99 S.Ct. 1667, 1672-73 (1979); 8 Moore's Federal Practice ¶6.05(1).  A need for

24  secrecy of this aspect of the transcript or Grand Jury proceeding itself is nonexistent.  As the concept

25  of particularized need is a balance of the need for secrecy and the need for disclosure, 8 Moore's

26  Federal Practice ¶6.05(3), and there is no secrecy need to weigh here, disclosure should be granted.

27  Moreover, since this aspect of the Grand Jury proceeding and transcript does not presently implicate

28  any of the purposes or reasons involved in the doctrine of Grand Jury secrecy, this Defendant has a

2

1  common-law right of access to this aspect of the proceedings which may not be denied absent

2  specific and substantial reasons for a refusal of access. Such reasons for refusal do not exist here.

3  See, In Re special Grand Jury (For Anchorage, Alaska), 674 F.2d 778 (1982).

4      There is no secrecy interest here and such transcripts should be produced, United States v.

5  Alter, 482 F.2d 1016, 1029 n.21 (9th Cir. 1973). In United States v. Alter, supra, involving the

6  appeal from a civil contempt adjudication stemming from a refusal to answer questions by a federal

7  grand jury, the Ninth Circuit stated:

8      "Alter was entitled to know the content of the court's charges to the grand jury. The
       proceedings before the grand jury are secret, but the ground rules by which the grand
9      jury conducts those proceedings are not. E.g., U.S. Judicial Conference Committee
       on the Operation of the Jury System, Handbook for Federal Grand Jurors 10 (1971)."
10

11     Finally, such transcripts could bear upon potential defense motions to dismiss.

12     It is of course possible that the Court instruction (apart from any instructions by government

13 counsel which are also requested) may be the same or similar to that involved in United States v.

14 Marcucci, 299 F.3d 1156, 1159 (9th Cir. 2002), cert. denied, 538 U.S. 934, 123 S.Ct. 1600 (2003)

15 and related cases. Even if so, there are issues arising from such an instruction that were not resolved

16 in those decisions.

17     Second, defense requests the transcript of the testimony of witnesses before the Grand Jury.

18 There is of course no question that the defense is entitled to the transcript of the Grand Jury

19 testimony of a witness after such a witness's direct examination at trial. Dennis v. United States,

20 384 U.S. 855, 86 S.Ct. 1840 (1966). Most of the reasons for the secrecy of Grand Jury proceedings

21 do not exist at all after the indictment has been disclosed. To the extent that any reason for secrecy is

22 still applicable at this stage, it does not outweigh a defendant's right and interest in adequate

23 preparation for trial after the indictment has been disclosed and the defendant brought before the

24 Court — at least insofar as access to the transcript of testimony before the Grand Jury by an

25 individual who will be a government witness at trial.

26     B.    MOTION TO SUPPRESS PHYSICAL EVIDENCE AND STATEMENTS MADE

27 BY THE DEFENDANT AS OF THE TIME THE DEFENDANT WAS IN CUSTODY

28     The declaration of the defendant under Crim.L.R. 47.1(g) is attached as Exhibit B.

1        1.      <u>Fourth Amendment</u>

2        Defendant MARES-INZUNZA moves to suppress any and all physical evidence and

3    statements obtained from him as of the time the defendant was detained and arrested.

4        The government has the burden to prove the reasonableness of warrantless detentions, arrests

5    and searches.  <u>Beck</u> v. <u>State of Ohio</u>, 379 U.S. 89, 97, 85 S.Ct. 223, 229 (1964); <u>United States</u> v.

6    <u>Carbajal</u>, 956 F.2d 924, 930 (9th Cir. 1992); <u>United States</u> v. <u>Wheeler</u>, 800 F.2d 100, 102 (7th Cir.

7    1986); <u>United States</u> v. <u>Longmmire</u>, 761 F.2d 411, 417 (7th Cir. 1985); <u>United States v. Impson</u>, 482

8    F.2d 197, 199 (5th Cir.), <u>cert denied</u>, 414 U.S. 1009 (1973).

9        The defense contends that the attendant circumstances did not give rise to the necessary basis

10   to detain or probable cause to arrest MARES-INZUNZA.

11       A detention or seizure of a person requires reasonable suspicion.  A detention or seizure

12   occurs when a reasonable person would not feel free to disregard the police and go about his

13   business.  A seizure does not occur simply because a police officer approaches an individual and

14   asks a few questions.  But, when a police officer, by means of physical force or show of authority,

15   acts such as would cause a reasonable person not to feel free to disregard him, a detention or seizure

16   has occurred.  <u>Kaupp</u> v. <u>Texas</u>, 538 U.S. 626, 630 (2003); <u>Florida</u> v. <u>Bostick</u>, 501 U.S. 429, 434

17   (1991).

18       A warrantless arrest requires probable cause to believe that a criminal offense has been or is

19   being committed.  <u>Devenpeck</u> v. <u>Alford</u>, 543 U.S. 146 (2004); <u>Kaupp</u> v. <u>Texas</u>, *supra*.

20       The defendant's statement and physical evidence that was the result of his unlawful detention

21   and arrest and fruits thereof must be suppressed.  <u>Taylor</u> v. <u>Alabama</u>, 457 U.S. 687, 102 S.Ct. 2664

22   (1982).

23       2.    <u>Fifth Amendment</u>

24       The defense also moves to suppress any and all statements of defendant after custody and any

25   fruits thereof on <u>Miranda</u>, and voluntariness grounds.

26          <u>Miranda</u>

27       An individual is in custody when, under the circumstances, "a reasonable person [would]

28   have felt he or she was not at liberty to terminate the interrogation and leave."  <u>Thompson</u> v.

4

1  <u>Keohane</u>, 516 U.S. 99, __, 116 S.Ct. 457, 465 (1995).

2       The Government must prove that this defendant knowingly, intelligently, and voluntarily

3  waived his rights against self-incrimination and to counsel, and must prove that the statements taken

4  from this defendant were obtained in compliance with the defendant's Fifth and Sixth Amendment

5  rights in the context of custodial interrogation.  <u>Miranda</u> v. <u>Arizona</u>, *supra*, 384 U.S. 436, 445, 86

6  S.Ct. 1602, 1612, 16 L.Ed. 694 (1966).

7       "Our holding will be spelled out with some specificity in the pages
   which follow but briefly stated it is this:  <u>the prosecution may not use</u>

8  <u>statements</u>, whether exculpatory or inculpatory, <u>stemming from</u>
   <u>custodial interrogation</u> of the defendant <u>unless it demonstrates the use</u>

9  <u>of procedural safeguards effective to secure the privilege against self-</u>
   <u>incrimination</u>.  By custodial interrogation, we mean questioning

10  initiated by law enforcement officers after a person has been taken into
    custody or otherwise deprived of his freedom of action in any

11  significant way.  As for the procedural safeguards to be employed,
    unless other fully effective means are devised to inform accused

12  persons of their right of silence and to assure a continuous opportunity
    to exercise it, the following measures are required.  Prior to any

13  questioning, the person must be warned that he has a right to remain
    silent, that any statement he does make may be used as evidence

14  against him, and that he has a right to the presence of an attorney,
    either retained or appointed.  The defendant may waive effectuation of

15  these rights, provided the waiver is made voluntarily, knowingly and
    intelligently.  If, however, he indicates in any manner and at any stage

16  of the process that he wishes to consult with an attorney before
    speaking there can be no questioning.  Likewise, if the individual is

17  alone and indicates in any manner that he does not wish to be
    interrogated, the police may not question him.  The mere fact that he

18  may have answered some questions or volunteered some statements on
    his own does not deprive him of the right to refrain from answering

19  any further inquiries until he has consulted with an attorney and
    thereafter

20
   consents to be questioned."  <u>Id.</u> at 384 U.S. at 445, 86 S.Ct. at 1612, 16

21  LED.2d at 706-07.  (Footnote omitted.) (Emphasis added.)

22       "If the interrogation continues without the presence of an attorney and
    a statement is taken, <u>a heavy burden rests on the government to</u>

23  <u>demonstrate that the defendant knowingly and intelligently waived his</u>
    <u>privilege against self-incrimination and his right to retained or</u>

24  <u>appointed counsel.</u>  This Court has always set high standards of proof
    for the waiver of constitutional rights, and we re-assert these standards

25  as applied to in-custody interrogation.  Since the <u>State</u> is responsible
    for establishing the isolated circumstances under which the

26  interrogation takes place and has the only means of making available
    corroborated evidence of warnings given during incommunicado

27  interrogation, <u>the burden is rightly on its shoulders</u>."  <u>Id.</u>, 384 U.S. at
    475, 86 S.Ct. at 1628.  (Citation omitted.)  (Emphasis added.)

28
        The failure to advise the defendant that anything said "can and will" be used against you

1    rendered the warnings given inadequate.  As the Ninth Circuit stated in <u>Collazo</u> v. <u>Estelle</u>, 940 F.2d

2    411, 418 (9th Cir. 1991) (*en banc*), <u>cert.</u> <u>denied</u>, 112 S.Ct. 870 (1992):

3           "<u>Miranda's</u> stated purpose [is] of making 'the individual more acutely
             aware that he is faced with a phase of the adversary system - that he is

4           not in the presence of persons acting solely in his interest.'"

5    The Court referenced that part of the <u>Miranda</u> decision where the Supreme Court stated:

6           "<u>The warning of the right to remain silent must be</u>
             <u>accompanied by the explanation that anything said can and will be</u>

7           <u>used against the individual in court.</u>  This <u>warning</u> is <u>needed</u> in order <u>to</u>
             <u>make him aware not only of the privilege, but also of the consequences</u>

8           <u>of forgoing</u> it.  It is only through an awareness of these consequences
             that there can be any assurance of real understanding and intelligent

9           exercise of the privilege.  Moreover, this <u>warning</u> may serve to <u>make</u>
             <u>the individual more acutely aware that he is faced with a phase of the</u>

10          <u>adversary system--that he is not in the presence of persons acting</u>
             <u>solely in his interest.</u>"  <u>Miranda</u> v. <u>Arizona</u>, 348 U.S. 436, 469 (1966).

11          (Emphasis added.)

12   Finally, the post warning questioning and statements of the defendant must be excluded

13   under <u>Missouri</u> v. <u>Seibert</u>, 542 U.S. 600, 124 S.Ct. 2601 (2004).  This Court must suppress the post

14   warning confession obtained during a deliberate two-step interrogation — within the meaning of

15   <u>Seibert</u> — where the midstream <u>Miranda</u> warning was objectively ineffective to apprise the suspect

16   of his rights.  <u>United States</u> v. <u>Williams</u>, 435 F.3d 1148, 1150, 1159 (9th Cir. Jan. 30, 2006).

17          <u>Voluntariness</u>.

18   Before a confession or any self-incriminating statement made orally or in writing is

19   admissible in evidence, the Court must determine that the confession was given voluntarily.  <u>Lego</u> v.

20   <u>Twomey</u>, 404 U.S. 477, 489, 92 S.Ct. 619, 626, 30 LED 2d 618 (1972); 18 U.S.C. §3501(a).  The

21   government bears the burden of establishing the confession's voluntariness.  <u>Lego</u> v. <u>Twomey</u>,

22   *supra*; <u>United States</u> v. <u>Jenkins</u>, 938 F.2d 934, 937 (9th Cir. 1991).

23          "The ultimate test remains that which has been the only clearly
             established test in Anglo-American courts for two hundred years:  the

24          test of voluntariness.  Is the confession the product of an essentially
             free and unconstrained choice by its maker:  If it is, if he has willed to

25          confess, it may be used against him.  If it is not, if his will has been
             overborne and his capacity for self-determination critically impaired,

26          the use of his confession offends due process."  <u>Schneckloth</u> v.
             <u>Bustamonte</u>, 412 U.S. 218, 225-26, 93 S.Ct. 2041, 36 LED 2d 854

27          (1973).  <u>United States</u> v. <u>Jenkins</u>, 938 F.2d 934, 938 (9th Cir. 1991).

28   Also "the admissibility of a confession turns as much on whether the techniques for

                                              6

1  extracting the statements ... are compatible with a system that presumes innocence and assures that a

2  conviction will not be secured by inquisitorial means as on whether the defendant's will was in fact

3  overborne." Miller v. Fenton, 474 U.S. 104, 116, 106 S.Ct. 445, 452, 88 LED. 2d 405 (1985);

4  United States v. Jenkins, *supra*.

5       In considering whether a confession is voluntary the Court must take into consideration all

6  the circumstances surrounding the giving of the confession.  Schneckloth v. Bustamonte, 412 U.S.

7  218, 226-27, 93 S.Ct. 2041, 2047, 36 LED. 2d 854 (1973); 18 U.S.C. §3501(b).  Relevant factors

8  include past history, education, delay, threats, and promises.  An unlawful arrest is a relevant factor.

9  A Court must specifically consider the following five factors under 3501(b):

10           (1) the time elapsing between arrest and arraignment of the defendant
             making the confession, if it was made after arrest and before
11           arraignment, (2) whether such defendant knew the nature of the
             offense with which he was charged or of which he was suspected at the
12           time of making the confession, (3) whether or not such defendant was
             advised or knew that he was not required to make any statement and
13           that any such statement could be used against him, (4) whether or not
             such defendant had been advised prior to questioning of his right to the
14           assistance of counsel; and (5) whether or not such defendant was
             without the assistance of counsel when questioned and when giving
15           such confession.

16       C.       LEAVE TO FILE FURTHER PRETRIAL MOTIONS AND FURTHER HEARING

17  DATE.

18       The defense requests leave to file further pretrial motions and a further hearing date as the

19  facts are further developed and the defense has had the opportunity to review additional discovery.

20

21                          **III.  CONCLUSION**

22       For these reasons and any further reasons which come to this Court's attention prior to or

23  at the time of the hearing of these motions, counsel respectfully requests that this Court grant these

24  motions.

25                          Respectfully submitted,

26

27  Dated:  March 11, 2008            s/Gerald T. McFadden
                                      GERALD T. McFADDEN, Attorney for
28                                    Defendant RENE MARES-INZUNZA
                                      E-mail: gtmcfadden@hotmail.com

                                      7

Gerald T. McFadden
Attorney At Law
The Garrettson House
2366 Front Street
San Diego, California 92101-1414
(619) 338-0507
Fax (619) 239-5872

February 15, 2008

Douglas Keehn
Assistant U. S. Attorney
880 Front Street
Room 6293
San Diego, CA 92101-8893

Re:     USA v. ReneMares-Inzunza
        08cr0344-LAB

Dear Mr.Keehn:

I acknowledge prior receipt of discovery pages 1 –68 and a post-arrest interview CD.

Would you please advise of the date and place of the removal(s) referred to in the indictment and provide the documents relating to that event and the tape if any of the removal hearing; and, the same information and documentation as to any other exclusion, deportation and/or removal which was relied upon for the removal referred to in the indictment, or which you will introduce evidence of at trial.

Would you also please provide a copy of my client's "A" file.

Generally, please accept this letter as my request for discovery of those items covered by F.R. Crim.P. 16(a) (1) (A) - (G), and F.R. Evid. 404(b), and also specifically for those items set forth below:

1. All oral, written or recorded statements or testimony in the Government's possession, made by the defendant and codefendants, all reports related to the circumstances of such statements; and a copy of any Miranda warning form and waiver form utilized in connection with questioning of the defendant.

2. A copy or inspection of any books, papers, documents, photographs, or tangible objects obtained from or belonging to the Defendant, or which will be used in the Government's case in chief or are otherwise material to the preparation of this Defendant's defense and any and all reports relating to the circumstances under which such books, papers, documents, etc., came into the possession of the Government.

Would you please advise under F.R. Crim. P. 12(b)(4)(B) what physical evidence or observations from any searches in this case you intend to introduce into evidence.

EXHIBIT A

Page 2
AUSA Douglas Keehn
Re: U.S.A. v. Mares-Inzunza
February 15, 2008


3. Disclosure of the names and identity of expert witnesses the Government intends to call at trial, their qualifications, subject of testimony, and reports; and the results of tests, examinations or experiments which are material to the preparation of this Defendant's defense or which are intended for use by the Government as evidence in chief at the trial; and a written summary of testimony the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case in chief at trial. Pursuant to F.R.Cr.P. 16(a)(1)(G), this summary must describe the witnesses' opinions, the bases and reasons therefor, and the witnesses' qualifications.

4. A copy of or disclosure of this defendant's prior criminal record, if any; and a copy of the prior criminal records of the codefendants.

5. Disclosure of any and all prior similar crimes, wrongs or acts, if any, or convictions of a similar nature to the charge in this case, if any, which the Government may seek to rely upon or introduce as evidence at any hearing or trial in this case for any purpose including proof of knowledge or intent on the part of the Defendant, codefendants or coconspirators in this case, and the investigative reports and witnesses concerning such acts.

6. Any and all evidence in the Government's possession or which could be reasonably acquired by the Government which would be favorable to this Defendant on the issues of guilt or sentencing under the principles of <u>Brady v. Maryland</u> 373 U.S. 383 (1963) and <u>Giglio v. United States</u>, 405 U.S. 153 (1972). The defense requests any information which would tend to attenuate, exculpate, exonerate or mitigate this Defendant's involvement in the circumstances involved in the Indictment. The defense requests that you inquire of the agents and witnesses involved in the investigation and prosecution of this Indictment.

7. The identities of known unindicted accomplices, aiders and abettors, or coconspirators.

8. Please advise of any identification procedure (photographic, in person, or otherwise), and provide any documents relating thereto, involving this defendant.

9. Disclosure of whether or not there has been any electronic surveillance of this defendant or the co-defendants and/or their various premises in this case and the investigation of this case.

10. Any and all voice records, tapes, mechanical or electrical recordings, logs, records, reports, memoranda, notes, letters or directives of any electronic or other surveillance of any wire or oral communications, including pen register data, relating to this defendant or the co-defendants in this case including any such records and/or surveillance as to which a party to the conversation allegedly consented.

11. Disclosure of the prior convictions of persons whom the government intends to call as witnesses at any hearing or trial in this case.

12. The name(s) and identities of any informant(s) and/or cooperating individual(s) involved in any investigation underlying this indictment and the prosecution of this indictment and/or who

Page 3
AUSA Douglas Keehn
Re: U.S.A. v. Mares-Inzunza
February 15, 2008

are witnesses to any events, incidents, or conversations relating to the alleged criminal activity underlying this indictment.

13. With respect to the informant(s) and witnesses referred to in Items No. 11 and 12, the disclosure of: (i) any and all prior convictions of the informant(s) and other government witnesses; (ii) any and all prior bad acts of the informant(s) and other government witnesses; (iii) any and all considerations given to or promises made to the informant(s) and other government witnesses; (iv) any and all advisements of potential charges or imprisonment and/or fines; (v) any and all threats made by the government or coercion applied by the government against the informant(s) and other government witnesses; (vi) any and all prior testimony of the informant(s); (vii) any and all information which arguably could be helpful or useful to the defense in impeaching or otherwise detracting from the probative force of the government's evidence, witnesses, and informant(s) or which could arguably lead to such records or such information, including any evidence or information tending to show the potentiality for bias on the part of government informant(s) and government witnesses, the narcotic habits of the informant(s) and government witnesses at the time of or prior to the relevant events, and/or the informant(s)' or government witnesses' personal dislike of any of the defendants in this indictment; and, (viii) the number of investigations in which the informant(s) have participated on behalf of the government, the nature of and total amount of remuneration or considerations provided to the informant(s) pursuant to such activities, and the consideration and/or remuneration provided to or promised to the informant(s) as a result of the investigation or investigations underlying this indictment.

14. The opportunity to interview any informant(s) and/or cooperating individual(s) sufficiently in advance of trial so that any further investigation which may be necessary may be accomplished without interrupting the trial itself.

15. Disclosure of transcripts of instructions to the grand jury in this case.

16. Disclosure of the transcripts of testimony of grand jury witnesses whom the government intends to call in its case in chief.

17. Disclosure of the names of the government's witnesses and their statements.

18. The review of witness files pursuant to *U.S. v. Henthorn*, 931 F.2d 29 (9th Cir. 1991).

Thank you for your cooperation.

Sincerely,

Gerald T. McFadden
Attorney at Law

GERALD T. McFADDEN (SBN 87446)
Attorney at Law
2366 Front Street
San Diego, CA  92101
(619) 338-0507
E-mail: gtmfadden@hotmail.com

Attorney for Defendant
RENE MARES-INZUNZA

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

(HON. LARRY ALAN BURNS)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Crim. Case No. 08CR0344-LAB |
| Plaintiff, | ) | DECLARATION OF DEFENDANT REGARDING MOTION TO SUPPRESS |
| v. | ) | |
| RENE MARES-INZUNZA, | ) | NCD: April 1, 2008 |
| Defendant. | ) | at 2:00 p.m. |

I, RENE MARES-INZUNZA, hereby state, under penalty of perjury, that:

1.    I am charged as the Defendant in the indictment in the above-captioned case.

2.    I was detained and questioned without any warnings as to citizenship, nationality, legality of presence, and immigration documents by United States Border Patrol Police on January 20, 2008, at about 7:40 a.m. in the area of Imperial Beach, California, and made statements.

3.    I was arrested and taken to the Imperial Beach Border Patrol Station.

4.    As far as I know, there was no warrant for my detention or arrest.

5.    At the station, I was again questioned without any warnings and made statements and was fingerprinted and photographed.

6.    Later at the station, I was given warnings, questioned again, and again made statements.

Executed this _11_ day of _MARZO_, 2008, At San Diego, California.

*EXH. B*

_____
RENE MARES-INZUNZA

Translated by Alejandro Amigo, investigator, for
Mr. Mc Fadden.

3/11/08