KAREN P. HEWITT
United States Attorney
A. DALE BLANKENSHIP
Assistant U.S. Attorney
California State Bar No. 235960
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-6199/(619) 235-2757 (Fax)
Email: Dale.Blankenship@usdoj.gov

Attorneys for Plaintiff
United States of America

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Criminal Case No. 08CR0344-LAB |
| ) | |
| Plaintiff, ) | Date:     April 1, 2008 |
| ) | Time:     2:00 p.m. |
| v. ) | |
| ) | GOVERNMENT'S RESPONSE AND |
| RENE MARES-INZUNZA, ) | OPPOSITION TO DEFENDANT'S MOTIONS |
| ) | TO: |
| Defendant. ) | |
| ) | (1)   SUPPRESS EVIDENCE; |
| ) | (2)   SUPPRESS STATEMENTS; |
| ) | (3)   COMPEL DISCOVERY; AND |
| ) | (4)   GRANT LEAVE TO FILE FURTHER |
| ) |         MOTIONS |
| ) | |
| ) | TOGETHER WITH STATEMENT OF FACTS, |
| ) | MEMORANDUM OF POINTS AND |
| ) | AUTHORITIES AND |
| ) | |
| ) | |
| ) | |
| _____ ) | |

COMES NOW, the plaintiff, UNITED STATES OF AMERICA, by and through its counsel Karen P. Hewitt, United States Attorney, and A. Dale Blankenship, Assistant U.S. Attorney, hereby files its Response and Opposition to the motions filed on behalf of RENE MARES-INZUNZA (Defendant"). This Response and Opposition is based upon the files and records of this case.

//

//

//

# I

## STATEMENT OF THE CASE

On February 13, 2008, a federal grand jury in the Southern District of California returned a one-count Indictment charging Defendant with being a deported alien found in the United States, in violation of Title 8, United States Code, Section 1326. Defendant was arraigned on the Indictment on February, 19, 2008, and entered a not guilty plea.

# II

## STATEMENT OF FACTS

### A.  INSTANT OFFENSE

On January 20, 2008, at approximately 7:40 a.m., United States Border Patrol Agent Monica Slack was conducting linewatch duties in the Imperial Beach Border Patrol area of responsibilities in an area known as "Spooner's Mesa." This area is approximately 4.5 miles west of the San Ysidro, California, Port of Entry and approximately 50 yards north of the United States/Mexico border and is commonly used by undocumented immigrants to further their entry into the United States. Agent Slack was alerted to the activation of a seismic intrusion device and responded to the area. Upon arriving in the area, Agent Slack observed two individuals attempting to conceal themselves in the brush in an area known as the "33 Draw". Agent Slack approached the two individuals and identified herself as a U.S. Border Patrol agent and questioned both individuals as to their citizenship and both individuals, including Defendant, Rene Mares-Inzunza, stated that they were citizens of Mexico illegally in the United States.

Border Patrol agents searched the area and found footprints leading from the border fence to the area where Defendant was apprehended. Defendant's shoes matched the tracks leading from the border fence.

Defendant and the other individual were arrested and transported to the Imperial Beach Border Patrol Station for processing. A records search revealed that Defendant was a documented foot guide, had a lengthy criminal record, and was previously deported by an immigration judge. When Agents uncovered information that Defendant was a footguide, they asked Defendant if this information was correct. Defendant stated that he is a footguide and that on this occasion he was

attempting to help the other individual, Jaime Aquino-Estrada, illegally enter the United States.

Border Patrol agents interviewed the individual apprehended with Defendant, Jaime Aquino-Estrada. Aquino-Estrada stated that Defendant agreed to help him illegally enter the United States.

### B.   POST-MIRANDA STATEMENT

At approximately 12:37 p.m. on January 20, 2008, Border Patrol Agent Slack advised Defendant of his Miranda rights in the Spanish language during a videotaped interview. Defendant indicated that he understood his rights and agreed to answer questions. Defendant stated that he illegally entered the United States by climbing the United States border fence with the purpose of traveling to Los Angeles . Defendant stated that he was a citizen of Mexico, that he does not have any documents that allow him to enter or reside in the United States, and that he has never applied for permission to enter the United States.

Defendant signed an affidavit stating that he is a citizen of Mexico; that he has no documents to enter the United States; that he was previously deported; and that he did not apply to the Attorney General for permission to re-enter the United States.

### C.   DEFENDANT'S CRIMINAL HISTORY

Defendant has an extensive alien smuggling history with 17 apprehensions. Defendant has five prior convictions for illegal entry in violation of 8 U.S.C. § 1325 (1979, 1980, 1981, 1982, and 1993). Defendant was convicted of transporting illegal aliens in violation of 8 U.S.C. § 1324 on February 9, 1992. Defendant was convicted of false statement to a federal officer in violation of 18 U.S.C. § 1001 on March 20, 2003.

### D.   DEFENDANT'S IMMIGRATION HISTORY

Defendant has been removed from the United States on 17 occasions. Defendant was most recently ordered removed from the United States by an immigration judge on August 20, 2002. Defendant's removal order was recently reinstated on October 27, 2007, and Defendant was removed pursuant to that reinstated order on October 28, 2007 via San Ysidro, California.

//
//
//

# III

# DISCUSSION

## A. DEFENDANT'S MOTION TO SUPPRESS EVIDENCE AND STATEMENTS SHOULD BE DENIED

Defendant moves to suppress <u>all</u> statement and evidence. This request should be denied. Defendant's field admissions are admissible as made within a routine border inspection. Moreover, there was more than adequate cause to arrest Defendant for violation of 8 U.S.C. § 1326 after the initial border inspection conducted by Agent Slack. Defendant's field admissions were not made during a custodial interrogation, and Defendant's statements made after being advised of, and waiving, his Miranda warnings were voluntary. Defendant did make statements in response to questioning regarding his past as a footguide before he was <u>Mirandized</u>. The Government does not intend to introduce these post-arrest, pre-<u>Miranda</u> statements. For these reasons, the Motion should be denied.

### 1. **Probable Cause to Arrest**

Defendant asserts that there did not exist probable cause to arrest and detain him. Agent Slack was alerted to the activation of a seismic intrusion device and responded to the area. Upon arriving in the area, Agent Slack observed two individuals attempting to conceal themselves in the brush in an area known as the "33 Draw". Agent Slack approached the two individuals and identified herself as a U.S. Border Patrol agent and questioned both individuals as to their citizenship and both individuals, including Defendant, Rene Mares-Inzunza, stated that they were citizens of Mexico illegally in the United States. There was more than adequate cause to detain and arrest Defendant.

### 2. **Defendant's Immigration Inspection Statements Are Admissible**

Defendant's statements made prior to his arrest were made in the context of routine border questioning by a United States Border Patrol Agent, the type of questions which have been found by the Supreme Court and the Ninth Circuit to be insufficient to trigger constitutional protections. Detaining a person for routine border questioning is not custodial. <u>United States v. Troise</u>, 796 F.2d 310, 314 (9th Cir. 1986); <u>see also</u> <u>United States v. Galindo-Gallegos</u>, 244 F.3d 728, 731 (9th Cir.),

modified by 255 F.3d 1154 (9th Cir. 2001). The Miranda requirement applies only when a defendant is in custody and undergoes custodial interrogation. The police do not need to give Miranda warnings before the defendant is in custody. United States v. Booth, 669 F.2d 1231, 1237 (9th Cir. 1981).

Defendant alleges that his pre-arrest immigration inspection statements should be suppressed because he was not Mirandized. The facts in this case indicate that Defendant was not in custody during the immigration inspection and therefore Miranda would not apply. Defendant was reasonably detained while the agent conducted an ordinary immigration inspection. The law clearly indicates that being detained for this purpose is permissible. See Stansbury v. California, 114 S.Ct. 1526 (1994) (defendant must be "in custody" to trigger need for Miranda warnings); Berkemer v. McCarty, 468 U.S. 442 (1984) (police officer whose "observations lead him reasonably to suspect" that an individual has committed a crime, may briefly detain that person to investigate the circumstances that provoked the officer's suspicions); United States v. Manasen, 909 F.2d 1357, 1358-59 (9th Cir. 1990) (routine questioning by customs officials is normally not custodial interrogation that triggers Miranda); United States v. Troise, 796 F.2d 310, 314 (9th Cir. 1986) (same); United States v. Woods, 720 F.2d 1022 (9th Cir. 1983) (brief questioning at airport based upon reasonable suspicion did not trigger Miranda).

Here, Agent Slack encountered Defendant just north of the United States-Mexico border. The agent questioned Defendant as to his citizenship and right to be in the country. Defendant, responded that he was a citizen of Mexico with no legal right to be in the United States. Pennsylvania v. Muniz, 496 U.S. 582, 601-04 (1990) (even if incriminating, answers elicited prior to Miranda warnings during procedures "necessarily attendant to the police procedure [are] held by the court to be legitimate" and admissible). During this questioning, Defendant was not placed in handcuffs or searched. All statements prior to Defendant's arrest are admissible.

**3.   Collecting Defendant's Biographical Data Is Not Interrogation**

"[T]his court and the Supreme Court generally do not view inquiries regarding general biographical information as 'interrogation.'" United States v. Foster, 227 F.3d 1096, 1103 (9th Cir. 2000) (even after Miranda warnings) (citing Pennsylvania v. Muniz, 496 U.S. 582 (1990) (plurality

opinion)). See also Booth, 669 F.2d at 1238 ("Ordinarily, the routine gathering of background biographical data will not constitute interrogation."). This is so, provided that the questions are not "reasonably likely to elicit an incriminating response from the suspect." Booth, 669 F.2d at 1237.

As noted in Foster, "initial biographical questions at the first port of entry [do] not amount to the initiation of interrogation" which must be preceded by Miranda warnings and a waiver. Foster, 227 F.3d at 1103. Here, Defendant was not subjected to Miranda-type interrogation. After Defendant was transported to the border patrol station, the Agents collected routine booking information, and took Defendant's fingerprints. Therefore, the Agents did not need to administer Miranda warnings before collecting biographical information from Defendant.

### 4. **Defendant's Post-Arrest Statements Were Voluntary**

A statement made in response to custodial interrogation is admissible under Miranda v. Arizona, 384 U.S. 437 (1966) and 18 U.S.C. § 3501 if a preponderance of the evidence indicates that the statement was made after an advisement of rights, and was not elicited by improper coercion. See Colorado v. Connelly, 479 U.S. 157, 167-70 (1986) (preponderance of evidence standard governs voluntariness and Miranda determinations; valid waiver of Miranda rights should be found in the "absence of police overreaching"). Although the totality of circumstances, including characteristics of the defendant and details of the interview, should be considered, improper coercive activity must occur for suppression of any statement. See id. (noting that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary'"); cf. Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973) ("Some of the factors taken into account have included the youth of the accused; his lack of education, or his low intelligence; the lack of any advice to the accused of his constitutional rights; the length of detention; the repeated and prolonged nature of the questioning; and the use of physical punishment such as the deprivation of food or sleep.") (citations omitted). While it is possible for a defendant to be in such a poor mental or physical condition that they cannot rationally waive their rights (and misconduct can be inferred based on police knowledge of such condition, Connelly, 479 U.S. at 167-68), the condition must be so severe that the defendant was rendered utterly incapable of rational choice. See United States v. Kelley, 953 F.2d 562, 564

(9th Cir.1992) (collecting cases rejecting claims of physical/mental impairment as insufficient to prevent exercise of rational choice).

### 5. Defendant's Statements Were Voluntary and Made After a Knowing, Intelligent, and Voluntary Waiver

Defendant's post-arrest statements are admissible because he knowingly, intelligently, and voluntarily waived his Miranda rights. As discussed previously, a statement made in response to custodial interrogation is admissible under Miranda v. Arizona, 384 U.S. 437 (1966), and 18 U.S.C. § 3501, if a preponderance of the evidence indicates that the statement was made after an advisement of rights, and was not elicited by improper coercion. Colorado v. Connelly, 479 U.S. 157, 167-70 (1986) (preponderance of evidence standard governs voluntariness and Miranda determinations; valid waiver of Miranda rights should be found in the "absence of police overreaching"; "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' ").

Here, the undisputed facts are that Defendant knowingly and voluntarily waived his Miranda rights. Defendant was properly advised of his Miranda rights following arrest. Defendant acknowledged that he understood his rights, both verbally and in writing, and he agreed to answer questions without the presence of an attorney. Defendant's Miranda advisal and subsequent interview were videotaped and the video was turned over to Defendant's counsel. Defendant makes no specific allegation of any coercive conduct on the part of the interviewing officers. Neither does Defendant claim to have been intimidated, threatened, or coerced in any manner by the interviewing officers. Defendant fails to allege with any specificity that the Miranda advisal and waiver were improper. The totality of circumstances demonstrates that Defendant's post-arrest, Mirandized statements were voluntary. Defendant's Motion for a voluntariness hearing should be denied.

## C. THE GOVERNMENT WILL COMPLY WITH ALL DISCOVERY OBLIGATIONS

The United States has and will continue to fully comply with its discovery obligations under Brady v. Maryland, 373 U.S. 83 (1963), the Jencks Act (18 U.S.C. 3500), and Rule 16 of the Federal Rules of Criminal Procedure.[1] To date, the United States has produced 68 pages of discovery, and

---

[1] Unless otherwise noted, all references to "Rules" refers to the Federal Rules of Criminal Procedure.

1 cd to Defendant's counsel including investigative reports. The Government will produce a copy of the deport tape as soon as it is received. In addition Government counsel informed defense counsel that Defendant's A-file has been received and defense counsel can review the A-file at a time convenient to both parties and the custodian agency. As of today, the United States has received no reciprocal discovery. The Government anticipates that all discovery issues can be resolved amicably and informally, and requests that no order be entered compelling specific discovery in light of the Government's position below.

### 1. **Defendant's Statements**

The United States recognizes its obligation under Federal Rules of Criminal Procedure ("Rules") 16(a)(1)(A) and 16(a)(1)(B) to provide to Defendant his written statements and the substance of Defendant's oral statements. The United States has produced all of Defendant's statements that are known to the undersigned Assistant U.S. Attorney at this time. If the United States discovers additional oral or written statements that require disclosure under the relevant Rules, such statements will be promptly provided to Defendant.

### 2. **Arrest Reports**

The United States does not object to this request and has already produced to Defendant all arrest reports known to the Government at this time.

### 3. **Prior Record**

The United States has provided Defendant with a copy of his known prior criminal record under Rule 16(a)(1)(D). See United States v. Audelo-Sanchez, 923 F.2d 129, 130 (9th Cir. 1990). Should the United States determine that there are any additional documents pertaining to the Defendant's prior criminal record, those will be promptly provided to Defendant.

### 4. **Evidence Seized**

The United States has complied and will continue to comply with Rule 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy all evidence seized that is within its possession, custody, or control, and that is either material to the preparation of Defendant's defense or is intended for use by the United States as evidence during its case-in-chief at trial, or was obtained from or belongs to Defendant.

### 5. Tangible Objects

The United States has complied and will continue to comply with Rule 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy tangible objects that are within its possession, custody, or control, and that is either material to the preparation of Defendant's defense or is intended for use by the United States as evidence during its case-in-chief at trial, or was obtained from or belongs to Defendant. The United States, however, need not produce rebuttal evidence in advance of trial. See United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).

### 6. Preservation of Evidence

As stated above, the United States will preserve all evidence to which the Defendant is entitled pursuant to the relevant discovery rules.

### 7. Reports of Examinations and Tests

The United States will provide Defendant with any scientific tests or examinations in accordance with Rule 16(a)(1)(F).

### 8. Expert Witnesses

The United States will comply with Rule 16(a)(1)(G) and provide Defendant with a written summary of any expert testimony that the United States intends to use during its case-in-chief at trial under Federal Rules of Evidence 702, 703 or 705. The Government will introduce expert testimony regarding fingerprint comparison. The Government anticipates that the expert will testify that any fingerprints taken as a result of this court's order to take fingerprint exemplars from Defendant will match the fingerprints on Defendant's A-file documents.

### 9. Brady Material

The United States has complied and will continue to comply with its discovery obligations under Brady v. Maryland, 373 U.S. 83 (1963).

### 10. Giglio Material

The United States has complied and will continue to comply with its discovery obligations under Giglio v. United States, 405 U.S. 150 (1972).

### 11. Henthorn Material

The United States will comply with its obligations under United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991), and request that all federal agencies involved in the criminal investigation and prosecution review the personnel files of the federal law enforcement inspectors, officers, and special agents whom the United States intends to call at trial and disclose information favorable to the defense that meets the appropriate standard of materiality. United States v. Booth, 309 F.3d 566, 574 (9th Cir. 2002) (citing United States v. Jennings, 960 F.2d 1488, 1489 (9th Cir. 1992)). If the undersigned Assistant U.S. Attorney is uncertain whether certain incriminating information in the personnel files is "material," the information will be submitted to the Court for an in camera inspection and review.

### 12. Jencks Act Material

The United States will comply with its discovery obligations under the Jencks Act, Title 18, United States Code, Section 3500, and as incorporated in Rule 26.2.

### 13. Cooperating Witnesses

At this time, the United States is not aware of any confidential informants or cooperating witnesses involved in this case. The Government must generally disclose the identity of informants where: (1) the informant is a material witness, and (2) the informant's testimony is crucial to the defense. Roviaro v. United States, 353 U.S. 53, 59 (1957). If there is a confidential informant involved in this case, the Court may, in some circumstances, be required to conduct an in camera inspection to determine whether disclosure of the informant's identity is required under Roviaro. See United States v. Ramirez-Rangel, 103 F.3d 1501, 1508 (9th Cir. 1997). If the United States determines that there is a confidential informant or cooperating witness involved in this case, the United States will either disclose the identity of the informant or submit the informant's identity to the Court for an in camera inspection.

### 14. 404(b) Material

The United States will disclose, in advance of trial, the general nature of any "other bad acts" evidence that the United States intends to introduce at trial pursuant to Federal Rule of Evidence 404(b). The United States intends to introduce Defendant's prior illegal entries into the United

States on June 1, 2001, March 7, 2002, March 9, 2002, June 18, 2002, June 19, 2002, August 14, 2002, January 26, 2003, May 23, 2003, October 15, 2007, October 27, 2007, October 29, 2007, and January 12, 2008, as evidence of knowledge, lack of mistake and modus operandi under FRE 404(b). Further, the United States intends to introduce Defendant's statement made on that same occasion under FRE 404(b) as evidence of modus operandi. The United States has previously provided discovery of this incident.

### 15. Witnesses

The United States will provide a list of witnesses in its trial memorandum. The grand jury transcript of any person who will testify at trial will also be produced.

### 16. Alien File

The United States will make Defendant's A-file available for inspection at a time mutually convenient to the parties and will continue to perform its duty under Brady and the discovery rules to disclose all material exculpatory information or evidence favorable to Defendant that is contained in the A-File. The documents in the A-File are not exculpatory. Most of the documents are highly incriminating in nature. The documents include numerous documents related to Defendant's immigration history and his criminal history. The documents establish that Defendant is an illegal alien with a felony criminal record who has been legally deported, removed from the United States, admonished of the criminal sanctions under 8 U.S.C. § 1326, and, despite the prior warnings, subsequently reentered the United States without applying for permission. The Government will provide all documents that fall within the scope of Rule 16.

### D. THE GOVERNMENT DOES NOT OBJECT TO DEFENDANT'S MOTION TO GRANT LEAVE TO FILE FURTHER MOTIONS PROVIDED THE MOTION IS BASED ON NEW INFORMATION

The Government does not object to the granting of leave to allow Defendant file further motions as long as the additional motions are based on newly discovered evidence or discovery provided by the Government subsequent to the instant motion at issue.

//

//

//

## IV

## **CONCLUSION**

For the foregoing reasons, the United States requests that the Court deny Defendant's Motions, except where unopposed..

Dated: March 14, 2008.

                                         Respectfully Submitted,

                                         KAREN P. HEWITT
                                         United States Attorney

                                         S/ A. Dale Blankenship
                                         A. DALE BLANKENSHIP
                                         Assistant United States Attorney
                                         Attorneys for Plaintiff
                                         United States of America
                                         Email: Dale.Blankenship@usdoj.gov

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>    v.<br><br>RENE MARES-INZUNZA,<br><br>            Defendant. | ) Criminal Case No. 08CR0344-LAB<br>)<br>)<br>) **CERTIFICATE OF SERVICE**<br>)<br>)<br>)<br>)<br>) |

IT IS HEREBY CERTIFIED THAT:

    I, A. DALE BLANKENSHIP, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

    I am not a party to the above-entitled action. I have caused service of **GOVERNMENT'S RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS:**

    1.    SUPPRESS EVIDENCE;
    2.    SUPPRESS STATEMENTS;
    3.    COMPEL DISCOVERY; AND
    4.    GRANT LEAVE TO FILE FURTHER MOTIONS

on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

    **Gerald T. McFadden, Esq.**
    **gtmfadden@hotmail.com**

    I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

    **None**

the last known address, at which place there is delivery service of mail from the United States Postal Service.

    I declare under penalty of perjury that the foregoing is true and correct. Executed on March 14, 2008.

                                          s/ A. Dale Blankenship
                                          A. DALE BLANKENSHIP